**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br>v.<br><br>JAMES KIRK, DARCY FREDERICKSON, AND JASON BEUMER.<br><br>Defendants. | Case No.: 25-CV-01926 (LMP/DTS)<br><br>**SUPPLEMENTAL DECLARATION OF HEATHER DAY PATREK IN SUPPORT OF PLAINTIFF U.S. BANK NATIONAL ASSOCIATION'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

I, Heather Day Patrek, declare as follows:

1. I am a Private Wealth Advisor Managing Director with U.S. Bank National Association ("U.S. Bank"). In addition to my declaration already filed in this matter on April 30, 2025 (*see* ECF No. 7), I submit this Supplemental Declaration in support of U.S. Bank's Motion for Temporary Restraining Order. The information in this declaration is based upon my review of U.S. Bank's business records, publicly available records, and my personal knowledge.

2. Shortly after James Kirk ("Kirk"), Darcy Frederickson ("Frederickson"), and Jason Beumer ("Beumer") (collectively, "Defendants") resigned from U.S. Bank on April 15, 2025, U.S. Bank initiated an internal investigation into the circumstances surrounding their departure. This investigation remains ongoing.

3. U.S. Bank's internal investigation has included a forensic analysis of the hard drives of the U.S. Bank-issued workstations used by Defendants, as set forth in the

Declaration of Andrew Waters in Support of U.S. Bank National Association's Motion for Temporary Restraining Order ("Waters Declaration"). U.S. Bank's internal review of this forensic analysis and the underlying documents accessed by Defendants took time—including review over the recent Memorial Day weekend—and was not completed until May 27, 2025.

4. I have reviewed the Waters Declaration, its exhibits, and the underlying documents referenced in those exhibits. These documents support my originally submitted declaration and its assertions relating to Defendants' suspected use of U.S. Bank's confidential information following their resignations from U.S. Bank.

5. I have reviewed the Microsoft Excel spreadsheets entitled (a) [redacted]; (b) [redacted]; (c) [redacted]; and (d) [redacted]. (*See* Waters Decl. ¶¶ 5–8.) Per the Waters Declaration, these spreadsheets were accessed by Frederickson on April 14, 2025, the day before she resigned from U.S. Bank. (*Id.*)

6. These spreadsheets reflect audit reports outlining all sales booked in the Minnesota market for the months of December 2024 through March 2025. Frederickson had no legitimate business reason to access these spreadsheets the day before resigning from U.S. Bank, and such spreadsheets would be valuable to U.S. Bank's competitors in that they contain information about U.S. Bank's clients and recent sales transactions.

7. I have reviewed the Microsoft Excel spreadsheet [redacted]. (*See* Waters Decl. ¶ 10.) Per the Waters Declaration, this spreadsheet was accessed by Kirk on April 14, 2025, the day before he resigned from U.S. Bank. (*Id.*)

8. This spreadsheet shows the client list Kirk shared with Steve Hobbs, U.S. Bank's former Senior Portfolio Manager who retired from U.S. Bank's Private Wealth Management division ("PWM") on May 23, 2025. The spreadsheet includes account names and the names of the portfolio managers recommended to assume the accounts upon Mr. Hobbs's retirement. Kirk had no legitimate business reason to access this information the day before resigning from U.S. Bank, and the information contained in this spreadsheet could be used by Kirk and U.S. Bank's competitors to identify and target clients who they perceive as vulnerable given the imminent retirement of Mr. Hobbs.

9. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 11.) Per the Waters Declaration, this spreadsheet was accessed by Kirk on April 14, 2025, the day before he resigned from U.S. Bank. (*Id.*)

10. This spreadsheet includes a list of clients with the names of the lead relationship manager, and other information such as the client's risk rating, revenue, tier, number of meetings with internal notes, and intention of whether to assign a portfolio manager as leader in place of a private wealth advisor. Kirk had no legitimate business reason to access this spreadsheet the day before resigning from U.S. Bank, and the information contained in this spreadsheet would be valuable to U.S. Bank's competitors and to Kirk following his resignation.

11. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 12.) Per the Waters Declaration, this spreadsheet was accessed by Kirk on April 11, 2025. (*Id.*)

12. This spreadsheet contains U.S. Bank's three main fee schedules with respect to PWM clients. Kirk had no legitimate business reason to access this spreadsheet within days of resigning from U.S. Bank, and the information contained in this spreadsheet—including sensitive fee rates that could be used to determine competitive pricing at a competitor—would be valuable to U.S. Bank's competitors and to Kirk following his resignation.

13. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 13.) Per the Waters Declaration, this spreadsheet was accessed by Kirk on April 10, 2025. (*Id.*)

14. This spreadsheet contains a list of U.S. Bank's current and former clients, including many of the clients' email addresses. Kirk had no legitimate business reason to access this spreadsheet within days of resigning from U.S. Bank, and the information contained in this spreadsheet—including names and email addresses of current and former clients—would be valuable to U.S. Bank's competitors and to Kirk following his resignation.

15. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 14.) Per the Waters Declaration, this spreadsheet was accessed by Kirk on April 9, 2025. (*Id.*)

16. This spreadsheet contains a client list from 2019 with information including account names and numbers, trust officers, fee schedules, and annual fee estimates. Kirk had no legitimate business reason to access this spreadsheet within days of resigning from U.S. Bank, and the information contained in this spreadsheet would be valuable to U.S. Bank's competitors and to Kirk following his resignation.

17. I have reviewed the Microsoft Word documents entitled (a) [redacted], (b) [redacted], (c) and [redacted]. (*See* Waters Decl. ¶ 15.) Per the Waters Declaration, the first two documents were accessed by Kirk on April 14, 2025, and the last document was accessed by Kirk on April 9, 2025. (*Id.*)

18. These documents contain mailing labels with names and addresses of clients that received Christmas cards from Kirk in 2015. While the list itself is older, the information remains valuable because the clients on this list are unlikely to have changed their contact information in that time. Kirk had no legitimate business reason to access this spreadsheet—which included the names of top clients—within days of resigning from U.S. Bank and in the middle of April more than nine years after the cards were sent.

19. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 16.) Per the Waters Declaration, this document was accessed by Kirk on April 11, 2025. (*Id.*)

20. This spreadsheet contains information about clients for whom Minnesota Vikings tickets were requested in 2016, including the client names, email addresses, phone numbers, client teams, annual revenue, and summaries of relationships. While the list itself

is older, it remains valuable because it is a list of many of the most valuable client relationships Kirk has developed over time on behalf of U.S. Bank and PWM. Kirk had no legitimate business reason to access this spreadsheet within days of resigning from U.S. Bank, and the information contained in this spreadsheet—including names and contact information for top clients—would be valuable to U.S. Bank's competitors and to Kirk for purposes of entertaining clients and soliciting them to a new firm.

21. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 18.) Per the Waters Declaration, this spreadsheet was accessed by Beumer on April 10, 2025. (*Id.*)

22. This spreadsheet shows the relationships that were managed by U.S. Bank's former Senior Portfolio Manager Steve Hobbs, who retired from PWM division on May 23, 2025. Specifically, the spreadsheet lists all of the customer account numbers, customer account names, market values, the names of the respective trust officers and private wealth advisors, and the name of the new portfolio manager who would be assuming portfolio management responsibilities. Beumer had no legitimate business reason to access this information within days of resigning from U.S. Bank, and the information contained in this spreadsheet could be used by Beumer and U.S. Bank's competitors to identify and target clients who they perceive as vulnerable given the imminent retirement of Mr. Hobbs.

23. I have reviewed the Microsoft Excel spreadsheet entitled [redacted]. (*See* Waters Decl. ¶ 19.) Per the Waters Declaration, this spreadsheet was accessed by Beumer on April 14, 2025, the day before he resigned from U.S. Bank. (*Id.*)

24. This spreadsheet is known internally at U.S. Bank as the "Daily Cash Report," which is a file a portfolio manager can run daily to identify a multitude of information in one location, including: (a) client account number; (b) client name; (c) name of PWM Trust Officer; (d) name of PWM Portfolio Manager; (e) name of PWM Private Wealth Advisor; (f) cash balance; (g) market value; (h) account status; (i) account type; (j) last trade date; (k) account inception date; (l) trustee capacity of U.S. Bank; (m) Investment Authority Status; (n) Investment Objective; (o) Investment Communication standard required; (p) Money Market Ticker; (q) IRA designation; (r) Employee account status; (s) State Situs; (t) Current Year capital gains; and (u) Prior Year capital gains. This particular spreadsheet included information for all accounts managed by Beumer as of April 11, 2025. The information contained in this spreadsheet would be valuable to U.S. Bank's competitors and to Beumer following his resignation.

25. I have reviewed the document entitled [redacted]. (*See* Waters Decl. ¶ 21.) Per the Waters Declaration, this spreadsheet was accessed by Beumer on April 10, 2025. (*Id.*)

26. This spreadsheet shows the account relationships for all Minnesota-based portfolio managers for PWM, including all account names, numbers, and market values. Beumer had no legitimate business reason to access this information within days of resigning from U.S. Bank, and the information contained in this spreadsheet—including information about Steve Hobbs's clients—could be used by Beumer and U.S. Bank's competitors to identify and target clients who are perceived as vulnerable given the imminent retirement of Mr. Hobbs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of May, 2025.

Signed by:
Heather Day Patrek
7EFD8A28CE114CC...

Heather Day Patrek